**Richmond**

## WILLIAM I. BANDAS

v.

## HELEN KAY DENSON BANDAS

No. 0143-92-2

Decided June 1, 1993

COUNSEL

William I. Bandas, *pro se.*

Harry P. Anderson, Jr. (Anderson & Parkerson, on brief), for appellee.

OPINION

**MOON, C.J.**[*]—William I. Bandas appeals an order affirming the arbitration award between him and his wife, Helen Kay Denson Bandas, on the following grounds: (1) the court failed to use the appropriate standard of review when affirming the arbitration award; (2) the court erred in failing to scrutinize the award based on substantive fairness and equity; (3) the court erred when affirming the award of spousal support and the classification, valuation and division of marital property; (4) the court erred in affirming the effective due date of the monetary award embodied in the arbitration award; and (5) the court erred in imposing sanctions against the husband. Except for the

---

[*] On May 1, 1993, Judge Moon succeeded Judge Koontz as Chief Judge.

amount of the sanctions imposed, we affirm because in a domestic relations case an arbitration award must be upheld unless it is unconscionable or against public policy.

On May 30, 1980, the appellant, husband, and the appellee, wife, were married in Richmond, Virginia. They have one child, Benjamin Denson Bandas, born April 12, 1986. Wife filed a Bill of Complaint against husband on April 20, 1989, in the Circuit Court of the City of Richmond. The ground for divorce alleged by wife, pursuant to Code § 20-91(3), was that, after the marriage husband was convicted of a felony, confined in the penitentiary on September 16, 1986, and cohabitation had not resumed. Husband filed a cross-bill alleging that on November 24, 1988, wife deserted him by informing him by "telephone that she no longer wanted to be married and did not want to resume cohabitation with him upon his release."

Subsequently, pursuant to Code § 8.01-581.01, the parties entered into an arbitration agreement which provided that "they specifically agree that in lieu of a trial of this case before the Circuit Court of the City of Richmond, the same shall be arbitrated and decided by the arbitrator named herein." The parties further agreed that "either of them may submit to the court the decision of the arbitrator as a final and binding agreement between them as to the issues arbitrated, said agreement to be affirmed, ratified and incorporated by reference in an appropriate order or decree pursuant to Code § 20-109.1."

The arbitrator found that the wife had a ground for divorce against husband under Code § 20-91(3); the arbitrator also found that husband had a ground for divorce against wife under Code § 20-91(1) because while the husband was incarcerated wife committed adultery. The arbitrator found that under these circumstances recrimination was a defense of the husband. He further found, however, that wife was entitled to spousal support under the exception of Code § 20-107.1, notwithstanding her adultery. The arbitrator found that denial of such award to wife would be manifestly unjust. The trial court affirmed the arbitrator's award.

I.

Husband contends that the trial court used the incorrect standard of review when affirming the arbitration award.

After reviewing the alleged errors of the arbitrator, the trial court addressed the issue of the standard of review of arbitration

awards. The court cited Code § 8.01-581.010, which states that because another court of law or equity would not grant such award embodied in the arbitrator's decision, this fact is *not* a ground to vacate such award. The court also cited *Howerin Residential Sales Corp. v. Century Realty of Tidewater, Inc.*, 235 Va. 174, 365 S.E.2d 767 (1988), which involved an arbitration award in a contract dispute. *Howerin* states that an arbitration award should be interpreted liberally so as to uphold the award and that the complaining party must overcome three factors: (1) the conclusiveness of the award as binding; (2) the presumption in its favor; and (3) the burden of showing arbitrator misconduct by convincing proof. Despite the fact that *Howerin* was a contract dispute and the arbitration agreement before the court here was a domestic relations issue, the trial court stated: "Even considering the importance of marriage and family relations, there is no indication in this record that the arbitration award is unconscionable or is against public policy."

The trial court, based on Code § 8.01-581.01 and *Howerin*, stated that "the test should be whether there is a gross miscarriage of justice under the circumstances." The trial court found none.

■ Although there is no law in Virginia dealing with the standard of review of arbitration agreements in domestic relations cases, other jurisdictions have considered the matter. See *Faherty v. Faherty*, 97 N.J. 99, 477 A.2d 1257 (1984); *Masterson v. Masterson*, 22 Ky. L. Rptr. 1193, 60 S.W. 301 (1901); *Schneider v. Schneider*, 17 N.Y.2d 123, 216 N.E.2d 318 (1966); *Sheets v. Sheets*, 22 A.D.2d 176, 254 N.Y.S.2d 320 (App. Div. 1964); *Crutchley v. Crutchley*, 306 N.C. 518, 293 S.E.2d 793 (1982). All have held that arbitration may be used in divorce proceedings as in all other disputes. Of course, no jurisdiction allows the arbitrator's award to ignore its jurisdictional prerequisites regarding divorce.

The New Jersey Supreme Court, in *Faherty*, held that arbitration awards in domestic relations "shall be valid, enforceable and irrevocable, except upon such grounds as exist at law or in equity for the revocation of a contract." 97 N.J. at 108 n.2, 477 A.2d at 1262 n.2 (citation omitted). The *Faherty* court applied the same standard of review for an arbitration agreement in a domestic relations case as in any other contract case.

Virginia has adopted the Uniform Arbitration Act in Code § 8.01-581.01 *et seq.* Code § 8.01-581.01, entitled "Validity of Arbitration Agreement," states in pertinent part:

A written agreement to submit any existing controversy to arbitration or a provision in a written contract to submit to arbitration any controversy thereafter arising between the parties is valid, enforceable and irrevocable, except upon such grounds as exist at law or in equity for the revocation of any contract.

This language implies that arbitration agreements should be upheld unless the agreement is against public policy or unconscionable, which are two grounds to set aside a contract in equity.

Nowhere in the Uniform Arbitration Act, as adopted by Virginia, are courts required to review an arbitration agreement in a domestic relations context with more scrutiny than other disputes, as husband would have us hold. We hold that the standard of review involving arbitration agreements in domestic relations should conform to the standard set forth in Code § 8.01-581.01. Arbitration agreements and the award embodied in them shall not be set aside on appeal unless there exist grounds to set aside a contract in equity such, as unconscionability or, as contrary to public policy.

## II.

Husband contends that the trial court erred in failing to scrutinize the arbitration award for substantive fairness and equity, and argues that the trial court cannot be bound by the Arbitration Act. This argument is based upon husband's premise that the Arbitration Act does not provide for substantive fairness and equity. Based on our holding concerning the standard of review for arbitration agreements in domestic relations cases, we disagree with husband.

Furthermore, husband's contention concerning how the trial court reviewed the arbitration award is incorrect. The court stated in its letter opinion that "there is no indication in this record that the arbitration award is unconscionable or is against public policy." The court found as follows:

The Court, in carrying out its responsibility to see that what it orders is appropriate, has reviewed this record at [husband's] urging only to find that the issues are ones that a fair thinking Arbitrator with adequate knowledge of the law could resolve. Indeed, the Court itself could have decided these questions the same way had it heard the evidence in regular proceedings. Especially in the context of arbitration generally, and here in the context of the specific agreement on arbitration, according to the principles the

parties made for themselves, there is no basis and utterly none, on which [husband] could rightly urge the Court to invoke the relief he seeks.

■ ''The trial court's findings must be accorded great deference. Its judgement will not be disturbed on appeal unless plainly wrong or without evidence to support it.'' *Keyser v. Keyser*, 7 Va. App. 405, 409, 374 S.E.2d 698, 701 (1988) (citation omitted).

Here, abundant evidence exists to support the court's conclusion that husband is not entitled to have the arbitrator's award set aside, as there is no evidence that the award is unconscionable or against public policy.

### III.

Next, the husband contends that the trial court erred in affirming the award of spousal support, and the classification, valuation and division of marital property.

### A. Spousal Support

Husband argues that wife is guilty of adultery under Code § 20-91(1) and, therefore, is not entitled to support pursuant to Code § 20-107.1, which states in pertinent part:

> Any maintenance and support shall be subject to the limitations set forth in § 20-109, and no permanent maintenance and support shall be awarded from a spouse if there exists in such spouse's favor a ground of divorce under the provisions of § 20-91(1). However, the court may make such an award notwithstanding the existence of such ground if the court determines from clear and convincing evidence, that *a denial of support and maintenance would constitute a manifest injustice, based upon the respective degrees of fault during the marriage* and the relative economic circumstances of the parties.

(emphasis added).

The arbitrator determined that both parties had a ground of divorce. The wife's ground was for husband's felony conviction under Code § 20-91(3); the husband's ground was for adultery under Code § 20-91(1). As a result, the arbitrator determined that recrimination was a defense of the husband. *See Davis v. Davis*, 8 Va. App. 12, 16, 377 S.E.2d 640, 642 (1989).

However, the arbitrator determined that recrimination would not bar the wife from seeking spousal support because both parties were at fault. Code § 20-107.1 states that notwithstanding a spouse's fault, support may be awarded to such spouse based on "degrees of fault," among other factors, if clear and convincing evidence establishes that justice requires such support.

The arbitration award dated December 29, 1989, at issue here stated that husband had a personal estate of $2,873,670 as of October 4, 1989, and an annual salary of $20,000. Husband testified that his expenses were $4,701.25 per month. The arbitrator noted that the net worth of husband was used to attribute a "reasonable income" to husband, $103,777.

Wife's assets aside from marital assets are "negligible." The wife received $374,324 from the sale of their marital residence, as did husband. Wife also had an interior decorating business that had produced income in the past. The arbitrator, based on income produced in the past, attributed $38,000 to $43,000 annually to wife's business. Wife testified that her business was depressed due to the litigation, and that her monthly expenses were $11,428.79.

The arbitrator also considered the fact that the marriage lasted approximately eight and one-half years, and that husband had been incarcerated for several years during the marriage, and wife had committed adultery after husband's incarceration.

The degree of fault of both parties and evidence of their relative economic circumstances supported the arbitrator and the trial court in finding that the wife should receive support.

Neither the arbitrator nor the trial court accepted husband's argument that recrimination was not a defense because there was no violation of Code § 20-91(3) concerning the ground of incarceration of a spouse for a felony. We disagree with the husband's contention that he did not violate Code § 20-91(3), because the wife, by visiting him in prison, had resumed cohabitation with the husband after the husband was incarcerated.

The arbitrator correctly stated:

[C]ohabitation is a "bundle of duties"... however many more of these duties, responsibilities, rights and incidents are missing in the situation where one of the parties is incarcerated and the other

party is not. Contribution to household chores, food preparation, companionship, sexual intimacy, care of children, emotional support between the parties, personal communication, participation in social events . . . and other incidences of . . . cohabitation are missing as well as the incident of sexual support.

The statute [Code § 20-91(3)] itself presumes that confinement terminates cohabitation. . . By use of the word "resumed," the legislature has clearly expressed its judgement that in case of confinement for a felony, cohabitation has ceased, and having ceased, must be voluntarily "resumed."

We hold that the trial court was correct in affirming the arbitrator's determination that each spouse had a ground of divorce against the other, that recrimination was a valid defense, and that spousal support was proper in this case despite wife's adultery.

### B. Amount of Spousal Support

Husband contends that the arbitrator failed to consider all of the factors of Code § 20-107.1 in determining the amount of spousal support.

However, the arbitrator specifically found in making the award that husband's net income would be $103,777, taking into account all of husband's assets. The arbitrator also found that the wife's annual income would be $38,000 to $43,000. "Reviewing these factors, as well as all the factors mentioned in Exhibit C attached hereto, and considering all the evidence, the Exhibits, and arguments of counsel and considering factors set forth in Code § 20-107.1," the arbitrator awarded wife $2450 per month.

The arbitrator listed each of the factors of Code § 20-107.1 and applied these factors to the circumstances of the husband and wife. We hold evidence supports the court's affirmance of the arbitration award regarding the amount of the spousal support.

### C. Classification of Marital and Separate Property

Husband argues that the arbitrator erred by failing to separate assets of the husband that had become commingled with marital assets, but were traceable to his separate assets.

We disagree with husband's legal analysis. We stated in *Pommerenke v. Pommerenke*, 7 Va. App. 241, 372 S.E.2d 630 (1988), that:

[I]n *Smoot [v. Smoot,* 233 Va. 435, 357 S.E.2d 728 (1987)], the husband contributed $20,000 from a premarital personal injury settlement toward the construction of a home on the parties' jointly owned property. The Supreme Court held that Code § 20-107.3 [entitled "Court may decree as to property of the parties"] *does not adopt the "source of funds doctrine,"* applicable in other states, and "Code § 20-107.3 contemplates only two kinds of property-marital and separate property, each expressly defined."

*Id.* at 248, 372 S.E.2d at 633 (citation omitted) (emphasis added). Based on the language in *Pommerenke,* we hold that the trial court did not err in affirming the arbitrator's decision classifying the property as either marital or separate.

Husband also argues that the arbitrator miscalculated the value of the marital estate. The alleged miscalculation is the difference between the finding by the arbitrator that $2,495,287.70 of the property is marital *and* the marital property value on Exhibit E of the Arbitration Award as $2,468,108.70. This difference is $27,179. However, the arbitrator recognized this error, and changed the total by accepting the lesser amount of marital property on Exhibit E:

I cannot trace back through the voluminous testimony and information about the marital property in order to identify that difference without a large investment of time and consequent expense. I am reluctant to incur that expense. The difference, in any event, will have no impact, or a negligible impact on the end results of this case. I will therefore change the figure that I had used in previous drafts to reflect the figure that is shown on Exhibit E, that is $2,468,108.70.

Therefore, husband got the benefit of the lower amount of the marital property, as he would have to make his monetary payment based on the percentage of a *lower* marital estate amount. We hold that the trial court did not err by affirming the arbitrator's finding on the matter.

### D. Division of Marital Property

Husband contends that arbitrator erred by failing to base the division of the marital estate on the factors set forth in Code § 20-107.3(E), and by failing to consider husband's contributions of the marital estate. The arbitrator awarded wife thirty percent of the marital estate.

The arbitrator not only listed in his decision the factors of Code § 20-107.3(E) relating to making a monetary award based on the marital property, he also mentioned the applicability of such factors to the circumstances of the husband and wife. We reject husband's contention.

Husband's argument citing his contribution to the marital estate is also without merit. We stated in *Zipf v. Zipf*, 8 Va. App. 387, 393 n.2, 382 S.E.2d 263, 266 n.2 (1989), as follows:

Nothing herein shall be construed, however, to sanction a disproportionate division of assets in favor of one party simply because that party has been primarily responsible for the development of the marital assets. The non-monetary contributions of each [of the] part[ies], as well as the other factors specified in Code § 20-107.3(E) must be considered.

We hold that evidence in the record supports the arbitrator's division of the marital property and the court was correct in affirming such decision.

## IV.

Husband next argues that the circuit court erred in ordering the husband to pay interest on the equitable distribution award from the date of the arbitrator's award, June 18, 1991, as opposed to the date the order was incorporated pursuant to Code § 20-109.1.

The arbitration agreement provided that either of the parties could submit the agreement to the court to affirm or ratify the agreement pursuant to Code § 20-109.1. The arbitration award called for the monetary award to be due and payable "within 30 days of the delivery of this . . . arbitration award and shall bear interest at the rate of eight per cent per annum (Code § 6.1-330.53) for such amounts as remain due and owing commencing on the 31st day after the date of the delivery of this arbitration award."

We hold that the court order simply affirmed what the parties agreed to: having the interest accrue thirty-one days after delivery of the arbitration award.

## V.

Wife alleged that sanctions were appropriate pursuant to Code § 8.01-271.1 because the grounds of appeal to the circuit court were

"frivolous and improper." The circuit court agreed and ordered sanctions.

"[W]here the issue underlying the imposition of a sanction 'is one of law and not fact, we do not accord the trial court's ruling the same weight it would be accorded if reached upon conflicting factual evidence.' . . . Thus, we apply an abuse-of-discretion standard in reviewing a trial court's award or denial of sanctions." *Oxenham v. Johnson*, 241 Va. 281, 287, 402 S.E.2d 1, 4 (1991).

Code § 8.01-271.1, entitled "Signing of pleadings, motions, and other papers; oral motions; sanctions," states in pertinent part:

> The signature of an attorney or party constitutes a certificate by him that . . . (ii) to the best of his knowledge, information and belief, formed after reasonable inquiry, [such pleading, motion or other paper] is well grounded in fact and is warranted by existing law or a good faith argument for the extension, modification, or reversal of existing law. . . .

> If a pleading, motion or other paper is signed or made in violation of this rule, the court, upon motion or upon its own initiative, shall impose upon the person who signed the paper or made the motion . . . an appropriate sanction.

The trial court stated that husband's contentions were not based on existing law, nor did they attempt to change existing law. Husband cited no case supporting his position of vacating a domestic relations arbitration award, when the outcome of the property and support issues are grossly disproportionate to the amount of property owned prior to marriage.

The trial court further stated that no basis existed for husband to contest the findings of the arbitrator. As discussed above, the arbitrator applied the facts to the appropriate code sections in determining the monetary award and spousal support and did not commit any error in its determination. As a result, the award was *not* unconscionable nor against public policy.

On appeal before this court, husband asserts that because the trial court refused to adopt wife's position that the arbitration award was not modifiable, the court agreed with the husband on this issue. The fact that the trial court agreed with the husband that the award could

be modified does not preclude the trial court from sanctioning husband. Although the trial court agreed it could review the award, it found no merit to husband's claim that it should be modified.

In essence, the husband argued that the arbitration award should be treated as a report from a commissioner in chancery. Even under that standard, husband still would not have been entitled to relief as a matter of law. His arguments were almost totally based upon false assertions and he made no legal argument that would entitle him to relief. As the trial court noted, it was more than a year after the arbitrator had made his findings in the proposed award before husband made any objection to it.

We hold that the trial court did not abuse its discretion by awarding sanctions based on the alleged errors cited by husband in his motion to vacate the arbitration award and the findings of the arbitrator. However, because one of the issues, regarding how an arbitration award should be treated by a trial court in domestic relations cases, which was raised by husband was of first impression in Virginia, and because husband had a facially reasonable argument that the equitable distribution award was excessive, we remand the award of sanctions to the trial court for review and for a new award that recognizes that the motion before it was not totally frivolous and without merit.

*Affirmed in part,*
*reversed in part,*
*and remanded.*

Elder, J., concurred.

Barrow, J., concurring in part and dissenting in part.

While I concur with the majority's disposition of the merits of this appeal, I believe that the trial court should not have imposed sanctions in this case. As the majority observes, no law exists in Virginia regarding the standard of review of arbitration agreements in domestic relations cases. Furthermore, the appellant's challenge to the arbitrator's determination that recrimination did not bar an award of spousal support to the wife involved an interpretation of a relatively new amendment to Code § 20-107.1. Consequently, I believe that "a competent attorney, after reasonable inquiry, could . . . have formed a reasonable belief" that the appellant's contention was "warranted by existing law." *Tullidge v. Board of Supervisors,* 239 Va. 611, 614, 391 S.E.2d 288, 290 (1990). Furthermore, I would resolve any doubt in his favor.