# CIRCUIT COURT OF SPOTSYLVANIA COUNTY

Karen Philyaw et al.

v.

Platinum Enterprises, Inc., et al.

January 9, 2001

Case No. CL00-236

BY JUDGE WILLIAM H. LEDBETTER, JR.

In a pretrial motion, two of three defendants ask the court to compel arbitration under the parties' written warranty agreement. In response, the plaintiffs argue that the Magnuson-Moss Warranty Act, applicable here, precludes binding arbitration. Further, they argue that this particular arbitration provision is unenforceable because it is unconscionable. The court agrees with the plaintiffs on both grounds.

*Facts*

For the limited purpose of this motion, the parties agree that the court may look to the pleadings for the pertinent facts.

The plaintiffs (Philyaws) purchased a used Toyota "4-Runner" from Platinum Enterprises, a local used car dealership, on June 29, 1998. In connection with the transaction, Platinum Enterprises provided to the Philyaws a service contract issued by Wynn's Extended Care, Inc. Wynn's is a California corporation. National Warranty Insurance Company (NWIC), a Nebraska corporation, insures payment of valid claims by consumers purchasing vehicle service contracts from Wynn's.

Shortly after the Philyaws purchased the vehicle, they experienced problems with the engine. Repairs were attempted but were not adequate to cure the defects. According to the Philyaws, the defendants have refused to make the necessary repairs and replacements.

As a consequence, the Philyaws filed this action for damages alleging, *inter alia*, that the defendants breached the warranties in the vehicle service contract and violated the Magnuson-Moss Warranty Act (15 U.S.C. 1501 *et seq.*).

Platinum Enterprises filed responsive pleadings that are not germane to this pretrial motion. Wynn's and NWIC filed a plea in bar and a motion to compel arbitration. A hearing was held on that motion on November 20, 2000.

## Decision

The service contract between Wynn's and the Philyaws contains a provision requiring that any disagreement be submitted to binding arbitration.

Virginia has adopted the Uniform Arbitration Act (Virginia Code § 8.01-581.01 *et seq.*) Under that Act, a written agreement to submit a controversy between the parties to binding arbitration is valid and enforceable "except upon such grounds as exist at law or in equity for the revocation of any contract." Upon a showing of such an agreement, a court shall order the parties to proceed with arbitration. Virginia Code § 8.01-581.02.

Similarly, the Federal Arbitration Act, which applies to contracts evidencing a transaction in interstate commerce, validates written arbitration provisions in such contracts. 9 U.S.C. § 1 *et seq.* It has been said that the FAA shows Congressional intent to create a national policy favoring arbitration, to insure judicial enforcement of privately made agreements to arbitrate, and to promote the expeditious resolution of claims by allowing parties to avoid the costs and delays of litigation. See, e.g., *Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 84 L. Ed. 2d 158, 105 S. Ct. 1238 (1985).

Where a party presents to the court a valid written agreement requiring disputes to be decided by arbitration, it is error for the court to deny the party's request for arbitration and a stay of proceedings. *Piland Corp. v. League Construction*, 238 Va. 187, 380 S.E.2d 652 (1989).

This brings us to the Philyaws' assertion that the agreement is invalid under the Magnuson-Moss Warranty Act. That Act applies to warranties contained in motor vehicle service contracts. The Act provides that a consumer who is damaged by the failure of the warrantor to comply with the obligations imposed by the warranties or by the provisions of the Act "may bring suit for damages and other legal and equitable relief" in state or federal court. The Act also provides an informal dispute settlement procedure.

Nowhere in the Act is there any language specifically prohibiting or precluding arbitration of claims arising under the Act. Nevertheless, some courts have reached the conclusion that the informal settlement dispute

mechanism provided in the Act is the exclusive non-judicial method of dispute resolution, allowing consumers always to retain the right of access to courts.

While this case was under advisement, the U.S. District Court for the Western District of Virginia decided *Pitchford v. Oakwood Mobile Homes, Inc.* (# 99-CV-53; VLW 000-3-215). In *Pitchford*, Judge James H. Michael held that "there can be no agreement at the time of sale to enter into binding arbitration on a written warranty." The clear intent of the Magnuson-Moss Warranty Act, he wrote, "is to encourage alternate dispute settlement mechanisms but to not deprive any party of their right to have their warranty dispute adjudicated in a judicial forum."

Other courts have reached a similar conclusion. See, e.g., *Wilson v. Waverlee Homes*, 954 F. Supp. 1530 (M.D. Ala. 1997) aff'd, 127 F.3d 40 (11th Cir. 1997).

The Federal Trade Commission, to which Congress delegated the power to set minimum standards for informal dispute settlement mechanisms under the Act, has interpreted the Act to mean that such mechanisms cannot contemplate binding resolution of a warranty dispute. In other words, according to the FTC, the Act does not allow any such mechanism to be legally binding so as to divest a consumer of access to courts.

Some courts have reached a contrary result, reasoning that the Act contains no language clearly evincing a Congressional intent to prohibit arbitration of warranty claims. See, e.g., *Southern Energy Homes v. Ard*, 772 So. 2d 1131 (Ala. 2000) (2000 WL 709500 Ala.). However, this court is of the opinion that *Pitchford* expresses the better view.

Therefore, the motion to compel arbitration of the warranty claims will be denied.

Further, the court is of the opinion that this particular arbitration clause is unenforceable because it is patently unconscionable.

The arbitration clause in this vehicle service contract provides that any dispute or disagreement will be submitted to binding arbitration in accordance with the rules of the American Arbitration Association. However, the clause goes on to require that the arbitration proceeding take place before an arbitrator in Los Angeles, California. Any pre-arbitration discovery is to be governed by the California Code of Civil Procedure. Each party must bear his own attorney's fees, expenses of witnesses, etc. and pay one-half the costs of arbitration and fees of the arbitrator.

Obviously, the arbitration provision effectively eliminates any remedy for consumers. The clause precludes access to courts. The only dispute mechanism allowed, binding arbitration, is purely illusory. Common sense dictates that retail purchasers such as the Philyaws could not afford the time

and expense to go to Los Angeles to arbitrate a claim arising from a used car sale in Virginia. In essence, the consumers have paid valuable consideration for a set of warranties but unwittingly have signed away all realistic relief in the event of a dispute about the warranties.

It is also obvious that this is the result intended by the drafters of the document. Why else would Wynn's, which does business all over the country, and NWIC, which is headquartered in Nebraska and also does business all over the country, select Los Angeles for the exclusive situs for arbitration and require an equal division of the arbitrator's fees and other costs regardless of which party prevails?

The court should not compel arbitration where the arbitration clause is unconscionable. See § 8.01-581.01; also see § 8.2-302 and *Black's Law Dictionary* (7th ed.) p. 1526, for definition and effect of unconscionable contract provisions.

Unconscionability is concerned with the intrinsic fairness of the terms of the agreement in relation to all attendant circumstances. It has been said that an agreement is unconscionable if no person in his senses would make it on the one hand and no fair and honest person would accept it on the other. *Hume v. United States*, 132 U.S. 406, 33 L. Ed. 393, 10 S. Ct. 134 (1889).

This vehicle service agreement contains many aspects of a contract of adhesion. A contract of adhesion is a standard form contract, prepared by one party and presented to a weaker party, usually a consumer, who has no bargaining power and little or no choice about the terms. *Black's Law Dictionary* (7th ed.) p. 318. Warranties are confusing and misleading. A retail consumer cannot bargain with the manufacturer or seller or other warrantor to adjust the terms of the warranties offered. See Senate Report on the Magnuson-Moss Warranty Act, quoted in 40 Fed. Reg. 60, 168 (1975), and in the dissenting opinion in *Southern Energy Homes v. Lee*, 732 So. 2d 994 (Ala. 1999). The contract in this case is a preprinted seven-page form document with Wynn's logo at the top. It is apparent that even if the consumers understood the ramifications of the arbitration clause, they could not have bargained for better terms under the circumstances of this case.

For this reason, the court holds that the arbitration clause under review is unenforceable because it is patently unconscionable.

Virginia recognizes the doctrine of severability. Severability is available here under basic contract principles. In severing the arbitration clause, the court is not rewriting or "blue penciling" the contract.

Accordingly, the court denies the motion and overrules the plea.